1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                          **EASTERN DISTRICT OF CALIFORNIA**

10

11  FRANK A. GUTIERREZ JR.,                        )    Case No.: 1:15-cv-0514-JLT
                                                   )
12              Plaintiff,                         )    ORDER REMANDING THE ACTION PURSUANT
                                                   )    TO SENTENCE FOUR OF 42 U.S.C. § 405(g)
13       v.                                        )
                                                   )    ORDER DIRECTING ENTRY OF JUDGMENT IN
14  CAROLYN W. COLVIN,                             )    FAVOR OF PLAINTIFF FRANK GUTIERREZ JR.
    Acting Commissioner of Social Security,        )    AND AGAINST DEFENDANT CAROLYN
15                                                 )    COLVIN, ACTING COMMISSIONER OF SOCIAL
                Defendant.                         )    SECURITY
16                                                 )

17        Frank Gutierrez Jr., asserts he is entitled to benefits under Title II of the Social Security Act.

18  Plaintiff argues the administrative law judge erred in evaluating the record, and seeks judicial review of

19  the denial of his applications for benefits.  Because the ALJ failed to identify properly consider lay

20  witness statements, the matter is **REMANDED** for further proceedings pursuant to sentence four of 42

21  U.S.C. §405(g).

22                                        **BACKGROUND**

23        In the application for a period of disability and disability insurance benefits, Plaintiff alleged

24  disability beginning January 15, 2013.  (Doc. 12-3 at 12)  The Social Security Administration denied

25  Plaintiff's applications at the initial level and upon reconsideration.  (*Id.*)  After requesting a hearing,

26  Plaintiff testified before an ALJ.  (*Id.* at 32)  The ALJ concluded Plaintiff was not disabled and issued

27  an order denying benefits on September 26, 2014.  (*Id.* at 12-24)  The Appeals Council denied review

28  of the decision on January 27, 2015, at which time the ALJ's determination became the final decision

                                                  1

1    of the Commissioner of Social Security.  (*Id.* at 2-4)

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion."  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment.  *Maounois v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

///

2

**ADMINISTRATIVE DETERMINATION**

The Commissioner established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520, 416.920(a)-(f).  The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.*  The ALJ must consider testimonial and objective medical evidence.  20 C.F.R. §§ 404.1527, 416.927.

**A.    Medical Background[1]**

Plaintiff suffered a "traumatic brain injury" in 2008 trying to break up a fight.  (Doc. 12-9 at 32) He "was struck in the right forehead by someone hold[ing] an 'ice scraper,'" which caused several lacerations and "knocked [Plaintiff] unconscious."  (*Id.* at 32-33)  The VA physician determined Plaintiff's brain injury did not impact his ability to work.  (*Id.* at 34)

In August 2011, Plaintiff "noted that…while running on the treadmill that his feet would go numb and have tingling paresthesia [sic], particularly in the toes," which "would resolve in about 5-10 minutes."  (Doc. 12-9 at 15)  A couple months later, he "began having low back pain when he awoke in the mornings," which "would improve after being up and about."  (*Id.*)  Plaintiff reported his back pain worsened after his deployment and described it as "constant" and "9/10 intensity" in June 2012.  (*Id.*) Plaintiff said the pain was "worse when trying to walk, twist, and bend over," which caused "shooting pain into the right leg."  (*Id.*)

In January 2013, Plaintiff began seeing a pain specialist who "performed [an] MRI of LS showing bilateral L5-S1 neuroforaminal narrowing."  (Doc. 12-9 at 15)  He was diagnosed with intervertebral disc syndrome.  (*Id.*) Plaintiff "tried one course of epidural steroids injection without help" in February 2013.  (*Id.* at 15-16, 22)

---

[1] Defendant declined to provide a summary of the medical evidence in the action because "Plaintiff does not challenge the ALJ's weighing of the medical opinion evidence [or] objective medical evidence."  (*See* Doc. 16 at 2) Accordingly, the Court's summary of the medical record—which is provided only as background—is based upon evidence identified by Plaintiff.

1   Plaintiff reported that in April 2013, he "awoke one morning with neck stiffness and pain,"

2   which radiated "into his right shoulder blades." (Doc. 12-9 at 25)  The pain "began to improve after

3   about a week and one-half," only to return "a few weeks later as a constant pain (3-4/10) on a daily

4   basis." (*Id.*)  At "approximately [the] same time," Plaintiff "began having headaches… about 4-6 times

5   a week." (*Id.* at 37)  Plaintiff said the headaches lasted for about "3-4 hours." (*Id.*)  The VA physician

6   did not believe the headaches were a residual effect of his brain injury, but were "rather related to [the]

7   neck condition." (*Id.*)  Plaintiff's nerve conduction study/ EMG was normal. (*Id.* at 16, 22)

8   In October 2013, Plaintiff had an examination for his Compensation and Pension /CAPRI

9   application for the Department of Veterans Affairs. (Doc. 12-9 at 13-14)  Plaintiff exhibited pain with

10   forward flexion and had a limited range of motion in the thoracolumbar spine. (*Id.* at 16, 18)  He had a

11   positive straight leg raise test on the right side. (*Id.* at 20, 23)  However, there were "no objective

12   findings to indicate radiculopathy." (*Id.* at 23)  Plaintiff was diagnosed with degenerative disc disease.

13   (*Id.* at 25)  The VA physician concluded:

14   The Veteran would be able to perform a sedentary position with the following
     limitations – he would require an ergonomically correct workspace and he would

15   require breaks for periods of sitting after 15 minutes.  He would have difficulty lifting
     objects greater than 5-10 pounds above shoulder level or below waist due to

16   exacerbation of his pain.  He would have difficulty with a job which required physical
     activities such as climbing stairs, climbing ladders, or repetitive movements of the

17   spine such as lifting/carrying, push/pull, bend/twist due to exacerbation of his pain.  He
     would have mild difficulty with mobility in the workplace due to his cane use.

18

19   (*Id.* at 22-23)

20   **B.       Plaintiff's Testimony**

21   Plaintiff testified at the administrative hearing before the ALJ on July 23, 2014. (Doc. 12-3 at

22   32)  He reported that he began serving in the Army on October 23, 2007. (*Id.* at 45) He testified he

23   was placed in "the medical hold unit" on December 15, 2013, which required him to report but not to

24   perform any active duties. (*Id.* at 44)  He remained in the medical hold unit until May 26, 2014, when

25   he "was medically discharge, honorable." (*Id.* at 45-46)

26   He said he was not able to work due to "[b]ulging discs" in his back. (Doc. 12-3 at 48)

27   Plaintiff reported that physicians told him "surgery wasn't an option" because "they didn't want to

28   mess up the nerves." (*Id.* at 50)

He estimated that he could lift "about 20 pounds maybe at the most" if he had to pick up a box and carry it to a table. (Doc. 12-3 at 47)  Plaintiff believed he could stand "continuously … in one spot" for "about 20 minutes;" sit still for about "[f]ifteen, twenty minutes;" and walk for "maybe 100 meters." (*Id.*)  He said he was unable to sit, stand, or walk for longer because he had pain in his lower back that would "start[] to shoot … down [his] leg" and his toes would "get numb." (*Id.*)  He said that his doctor prescribed a cane for him to use. (*Id.* at 54)

Plaintiff reported he lived in a house with his wife, three daughters, and mother. (Doc. 12-3 at 51)  He said he did not go grocery shopping alone or help with meal preparation. (*Id.*)  In addition, Plaintiff testified he did not do any household chores such as sweeping, vacuuming, mopping, or emptying the trash. (*Id.* at 52)

**C.     Lay Witness Statements**

    1.     Third Party Function Report

Valerie Gutierrez, Plaintiff's wife, completed a "Function Report" on January 20, 2014. (Doc. 12-7 at 38-45) According to Mrs. Gutierrez, Plaintiff's condition affected his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete task, use his hands, and concentrate. (*Id.* at 43)  She reported Plaintiff could not "lift more [than] 10 pounds," and could only use one hand, due to needing the other for his cane. (*Id.* at 38, 43)

She observed that it was "[h]ard for [Plaintiff] to dress" due to his pain, and that he was in pain when sitting to eat at a table, or sitting to use the restroom. (Doc. 12-7 at 38)  Mrs. Gutierrez said Plaintiff could not "stand long to cook," so his meal preparation was limited to "Hungrey (sic) Man meals and all kinds of soups," which took "3-5 minutes." (*Id.* at 39)  She noted also that Plaintiff could not "put pressure on his right leg." (*Id.* at 43) Mrs. Gutierrez estimated Plaintiff as able to walk for "5 feet" before he needed to rest. *Id.*

    2.     Hearing Testimony

Josephine Mendoza, Plaintiff's mother, testified at the administrative hearing before the ALJ. (Doc. 12-3 at 56) She acknowledged that Plaintiff had been in the Army until May, so she did not have a chance to observe him regularly until that time but said she "visited him a few times." (*Id.* at 57) Ms. Mendoza reported that she saw Plaintiff's "struggle with his disability" and believed he was "very

5

1    limited on things he [was] able to do for himself and for his family." (*Id.*)

2        Ms. Mendoza stated Plaintiff was able to prepare "a sandwich or something like that but not

3    cook." (Doc. 12-3 at 57)  She explained Plaintiff could not cook "because [it was] hard for him to be

4    bending down or getting the pots or standing too long cooking." (*Id.*)  According to Ms. Mendoza,

5    although Plaintiff would start a load of laundry, she was the one to "take [the clothes] out, put them in

6    the dryer." (*Id.* at 58)  In addition, Ms. Mendoza testified that she did not believe Plaintiff slept well

7    because she could "hear him at night restless and walking around with his cane in pain." (*Id.*)

8    **D.    The ALJ's Findings**

9        Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial

10   gainful activity after the alleged onset date of January 15, 2013.  (Doc. 12-3 at 14)  At step two, the

11   ALJ found Plaintiff's severe impairments included: "(1) Degenerative disk disease of the lumbar and

12   cervical spine; and (2) Pain disorder." (*Id.* at 15)  At step three, the ALJ determined Plaintiff did not

13   have an impairment, or combination of impairments, that met or medically equaled a Listing.  (*Id.* at

14   18)  Next, the ALJ determined:

15       [T]he claimant has the residual functional capacity (RFC) to perform a range of
         sedentary work as defined in 20 CFR 404.156(a).  The claimant can lift and carry 10
16       pounds occasionally and less than 10 pounds frequently; sit for 6 out of 8 hours with
         normal breaks; stand/walk for 2 out of 8 hours with normal breaks; must be allowed to
17       shift positions between sitting and standing for comfort every 30 minutes throughout
         the workday, while staying on task; a handheld assistive device may be used for
18       ambulation, but would not reduce the lift/carry limits described above; can occasionally
         use the upper extremities for overhead reaching and overhead pushing and pulling
19       activities; can otherwise push and pull within the limits for lifting and carrying
         described above; cannot crawl; cannot climb ladders, ropes, or scaffolds; is able to
20       perform all other postural activities occasionally; must avoid concentrated exposure to
         extreme cold temperatures; must avoid all exposure to workplace hazards such as
21       unprotected heights or unguarded moving machinery; cannot operate a motor vehicle;
         and cannot perform face paced or production line type of work.

22

23   (*Id.* at 18)

24       Based upon this RFC, the ALJ determined Plaintiff was "unable to perform any past relevant

25   work." (*Id.* at 22)  However, the ALJ found there were "jobs that exist in significant numbers in the

26   national economy" that Plaintiff could perform, including document preparer, surveillance monitor,

27   and call out operator.  (*Id.* at 23)  Consequently, the ALJ concluded Plaintiff was not disabled as

28   defined by the Social Security Act.  (*Id.* at 24)

### DISCUSSION AND ANALYSIS

Appealing the decision finding he was not disabled, Plaintiff asserts the ALJ erred in evaluating the evidence, including the lay witness testimony offered by his wife and mother.  (Doc. 13 at 6-8)  On the other hand, Defendant argues the administrative decision should be affirmed, and that "[t]he ALJ properly rejected lay opinion testimony."  (Doc. 16 at 4, emphasis omitted)

**A.      ALJ's Rejection of Lay Witness Statements**

The ALJ must consider statements of "non-medical sources" including spouses, parents, and other relatives in determining the severity of a claimant's symptoms.  20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4); *see also Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006) ("In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to do work.").  As a general rule, "lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment."  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (emphasis, internal citations omitted).  To discount the testimony of a lay witness, the ALJ must give specific, germane reasons for rejecting the opinion of the witness.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

Addressing the statement of Plaintiff's wife and mother, the ALJ indicated he gave their "observations little weight for several reasons."  (Doc. 12-3 at 22)  Specifically, the ALJ stated:

> First, both of these persons are related to the claimant.  They are therefore expected to be sympathetic to the claimant and give him the benefit of the doubt.  Second, there is no evidence to suggest that either of these persons have training that qualifies either of them to determine which of the claimant's apparent limitations are due to his medical impairments as opposed to other factors.  Third, as the claimant's wife, Mrs. Gutierrez has a financial interest in the favorable adjudication of the claimant's application for disability benefits, and therefore has an interest in portraying the claimant's limitations as precluding sustained work activity.  Lastly, her observations are not consistent with the record as a whole.  For example she indicated that the claimant was able to walk only "5 feet" and then he needed to rest for ten minutes before resuming walking.  (Exhibit 7E, p. 6).  In contrast, even the claimant himself acknowledged that he was able to walk 100 meters at a time (Claimant's Hearing Testimony).  For these reasons, the undersigned does not find the statements of Mrs. Gutierrez or Ms. Mendoza to be persuasive and affords them little weight.

(*Id.* at 21-22)  Plaintiff argues that each reason identified by the ALJ "is specifically prohibited by the Ninth Circuit."  (Doc. 13 at 7, citing *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996); *Dodrill*, 12 F.3d at 918-19; *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009); *Stillwater v. Comm'r of Soc. Sec.*

1    *Admin.*, 361 Fed. App'x. 809, 812 (9th Cir. 2010))

2        1.     Relationship with Plaintiff and financial interest

3        As an initial matter, the Ninth Circuit determined that rejecting lay witness testimony on the

4    grounds that the witness is related to the claimant, such as a spouse, and an interested in party in the

5    action, is not a ground for rejecting the testimony.  *See Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685,

6    694 (9th Cir. 2009).  The Court explained:

7          Such a broad rationale for rejection contradicts our insistence that, regardless of
     whether they are interested parties, "friends and family members in a position to

8          observe a claimant's symptoms and daily activities are competent to testify as to [his
     or] her condition." *Dodrill,* 12 F.3d at 918-919.  Although spouses do not usually

9          observe each other at work, they do usually observe each other at home.  Thus, insofar
     as the ALJ relied on characteristics common to all spouses, she ran afoul of our

10         precedents.

11         This does not mean an ALJ must accept the testimony of the spouse who knows little
     about a claimant's functional capacity.  But the ALJ must explain such ignorance in the

12         individual case.  Similarly, evidence that a specific spouse exaggerated a claimant's
     symptoms *in order* to get access to his disability benefits, as opposed to being an

13         "interested party in the abstract," might suffice to reject that spouse's testimony.

14   *Id.*  Here, the ALJ did not find Mrs. Gutierrez had little opportunity to observe Plaintiff, or that she

15   exaggerated Plaintiff's symptoms for the purpose of getting access to his disability benefits. Thus, the

16   fact that Mrs. Gutierrez is Plaintiff's spouse and "has a financial interest in the favorable adjudication"

17   is not a proper reason for rejecting her testimony.

18       Likewise, the ALJ erred in rejecting the testimony of Ms. Mendoza because she is Plaintiff's

19   mother.  *See Regennitter v. Comm'r of Social Security Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999)

20   (holding the ALJ erred in rejecting the testimony of a claimant's mother on the grounds of "her alleged

21   bias as his mother" because "the fact that a lay witness is a family member cannot be a ground for

22   rejecting his or her testimony").

23       2.     Lack of medical training

24       The ALJ purports to discredit the testimony of Ms. Mendoza and Mrs. Gutierrez simply because

25   they do not have any medical training "to determine which of the claimant's apparent limitations are

26   due to his medical impairments as opposed to other factors." (Doc. 12-3 at 22)  However, the

27   Regulations specifically instruct all administrative law judges to consider testimony from "non-medical

28   sources" who have an opportunity to observe the claimant.  *See* 20 C.F.R. §§ 404.1513(d)(4),

1    416.913(d)(4).  Thus, the fact that Ms. Mendoza and Mrs. Gutierrez have no medical training is not a

2    proper reason to reject their testimony.  *See Dodrill,* 12 F.3d at 919 (explaining the Regulations instruct

3    the ALJ to "consider observations *by non-medical sources* as to how an impairment affects a claimant's

4    ability to work") (emphasis added).

5                3.      Inconsistency with the record

6            Finally, the ALJ asserts the statements by Mrs. Gutierrez are "not consistent with the record as a

7    whole."  (Doc. 12-3 at 22)  For example, the ALJ cited only that Mrs. Gutierrez indicated Plaintiff was

8    able to walk "5 feet" before needing to rest, while Plaintiff said he could "walk 100 meters."  (*Id.*)

9    Defendant contends this inconsistency "is an appropriate reason to reject lay witness testimony."  (Doc.

10   16 at 5, citing, e.g., *Bayliss v. Barnhart,* 427 F.3d 1211, 1218 (9th Cir. 2005).

11           Notably, the ALJ failed to resolve the conflict between the statements offered by Plaintiff and

12   Mrs. Gutierrez.  This is not sufficient because the ALJ has a burden to resolve conflicting evidence. *See*

13   *Morgan v. Commissioner*, 169 F.3d 595, 599-600 (9th Cir. 1999).  For example, it is possible that Mrs.

14   Gutierrez meant that Plaintiff could walk five feet *without* a cane, while Plaintiff testified he could walk

15   100 meters *with* the cane. Without the ALJ's resolution or explanation, it is impossible to determine the

16   import of these statements.  Also, relying upon this single inconsistency is an insufficient basis for

17   rejecting the entirety of her lay witness report, which also addressed Plaintiff's limitations with postural

18   activities such as bending, squatting, reaching, and kneeling.  (*See* Doc. 12-7 at 43)

19           Moreover, this case is distinguishable from *Bayliss*, in which the plaintiff argued the ALJ

20   improperly rejected *portions* of lay witnesses' testimony because the ALJ accepted testimony of the

21   claimant's family and friends "that was consistent with the record of [her] activities and the objective

22   evidence in the record; he rejected portions of their testimony that did not meet this standard." *Bayliss*,

23   427 F.3d at 1211.  The Court found inconsistency with the record was a germane reason to reject the

24   lay witness testimony, because "rejection of certain testimony was supported by substantial evidence."

25   *Id.*  However, in this case, the ALJ rejected Mrs. Gutierrez's statement in its entirety.

26   **B.      Remand is Appropriate**

27           The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to

28   order immediate payment of benefits is within the discretion of the District Court.  *Harman v. Apfel*,

1    211 F.3d 1172, 1178 (9th Cir. 2000).  Except in rare instances, when a court reverses an administrative

2    agency determination, the proper course is to remand to the agency for additional investigation or

3    explanation.  *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S.

4    12, 16 (2002)).  Generally, an award of benefits is directed when:

5          (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence,
      (2) there are no outstanding issues that must be resolved before a determination of

6          disability can be made, and (3) it is clear from the record that the ALJ would be
      required to find the claimant disabled were such evidence credited.

7

8    *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  In addition, an award of benefits is directed

9    when no useful purpose would be served by further administrative proceedings, or where the record

10   was fully developed.  *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

11         Here, the ALJ rejected the testimony of Josephine Mendoza merely because she is Plaintiff's

12   mother and lacks medical training to evaluate Plaintiff's limitations.  The Ninth Circuit determined

13   these reasons are legally insufficient.  Likewise, the ALJ erred in rejecting the lay witness report

14   prepared by Valerie Gutierrez. *See Valentine*, 574 F.3d at 694; *Dodrill,* 12 F.3d at 919.  Because it is

15   not clear whether Plaintiff would be disabled if the information provided by Ms. Mendoza and Mrs.

16   Gutierrez were adopted—such as a limitation to only using one hand, due to Plaintiff's use of a cane,

17   and further postural limitations— it is appropriate to remand the matter for further proceedings.  *See*

18   *Dodrill*, 12 F.2d at 919 (remanding the matter for the ALJ to "articulate specific findings" for rejecting

19   the testimony of the lay witness); *Stout*, 454 F.3d at 1056 ("where the ALJ's error lies in a failure to

20   properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider

21   the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the

22   testimony, could have reached a different disability determination").  Consequently, the matter should

23   be remanded for the ALJ to re-evaluate the evidence.

24                                **CONCLUSION AND ORDER**

25         For the reasons set forth above, the Court finds the ALJ failed to articulate specific, germane

26   reasons for rejecting the opinion of the lay witnesses.  As a result, the Court should not uphold the

27   administrative decision.  *See Sanchez*, 812 F.2d at 510.  Because remand is appropriate for this reason,

28   the Court does not offer any findings regarding the other issues raised in Plaintiff's opening brief.

Based upon the foregoing, **IT IS HEREBY ORDERED**:

1.      The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and

2.      The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Frank Gutierrez Jr., and against Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:    **September 26, 2016**              **/s/ Jennifer L. Thurston**
                                         UNITED STATES MAGISTRATE JUDGE